1
2
3
4
5
6
7
8
9
10

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17
18

| | |
|---|---|
| **WILLIAM TERRY MACDONALD,** <br><br> Petitioner, <br><br> **v.** <br><br><br> **DANIEL PARAMO,** <br><br> Respondent. | **Case No. 1:13-cv-00812 DAD MJS (HC)** <br><br> **FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS** |

19
20
21
22
23
24
25
26

Petitioner is a state prisoner proceeding with a petition for writ of habeas corpus under 28 U.S.C. § 2254. He is represented by the Law Offices of David Mugridge. Respondent Daniel Paramo, Warden at the R.J. Donovan Correctional Facility, is substituted as the proper respondent under Rule 25(d) of the Federal Rules of Civil Procedure. Respondent is represented by Darren K. Indermill of the office of the California Attorney General. The parties have not consented to Magistrate Judge jurisdiction. (ECF Nos. 5, 10.)

I. **PROCEDURAL BACKGROUND**

27
28

Petitioner is currently in the custody of the California Department of Corrections

1

1   and Rehabilitation pursuant to a judgment of the Superior Court of California, County of

2   Mariposa, following his conviction by jury trial on April 29, 2010, of fifteen counts of lewd

3   acts upon a child. (Clerk's Tr. at 674-78.) On July 23, 2010, Petitioner was sentenced to

4   an indeterminate term of ninety (90) years to life plus twenty-two (22) years in state

5   prison. (Id.)

6          Petitioner filed a direct appeal with the California Court of Appeal, Fifth Appellate

7   District on February 4, 2011. (Lodged Docs. 25-27.) The appeal was denied on

8   December 9, 2011. (Lodged Doc. 28.) On January 19, 2012, Petitioner filed a petition for

9   review with the California Supreme Court. (Lodged Doc. 29.) The petition was summarily

10  denied. (Id.)

11         On March 8, 2013, Petitioner filed a petition for writ of habeas corpus with the

12  Mariposa County Superior Court. (Lodged Doc. 30.) The petition was dismissed on April

13  2, 2013. (Id.) Petitioner proceeded to file a petition for writ of habeas corpus with the

14  California Supreme Court. The petition was summarily denied on July 10, 2013. (See

15  Lodged Doc. 31.)

16         Petitioner filed his federal habeas petition on May 29, 2013. (Pet., ECF No. 1.)

17  The petition raised two different claims for relief. Petitioner asserts that:

18  (1)    Trial counsel was ineffective for (a) failing to object to the prosecution's

19         questioning of witnesses, (b) failing to object to the admission of

20         photographic evidence, and (c) opening the door to damaging rebuttal

21         testimony; and

22  (2)    That errors by the trial judge and prosecutorial misconduct were prejudicial

23         to his defense. (Id.)

24         Respondent filed an answer to the petition on September 18, 2013, and Petitioner

25  filed a traverse on February 12, 2014.[1] (Answer & Traverse, ECF Nos. 14, 18.) The

26

27         [1] Petitioner's counsel filed the wrong opposition to the answer on February 12, 2014. On October
    25, 2014, Petitioner filed the correct opposition and a declaration from Randy Bell, paralegal, for
    Petitioner's counsel. (ECF No. 19, 20.) In the declaration, Bell explained that he inadvertently filed the
28  wrong traverse. While the traverse is technically untimely, the Court shall review the merits of arguments
                                                                                    (continued…)

2

1  matter stands ready for adjudication.

2  II.  **STATEMENT OF THE FACTS**[2]

3           On April 8, 2010, the district attorney filed a second amended
   information that charged MacDonald with committing 15 lewd or lascivious
4  acts with three children under the age of 14 with the intent to arouse,
   appeal to, or gratify his or the children's lust, passions, or sexual desires
5  (Pen. Code, § 288, subd. (a)), that alleged his eligibility for 15-to-life
   indeterminate terms due to commission of some of the offenses against
6  more than one victim (§ 667.61, subds. (b), (c)(8), (e)(4)), that alleged his
   ineligibility for probation due to commission of some of the offenses
7  against more than one victim (§ 1203.066, subd. (a)(7)), and that alleged
   his ineligibility for probation due to substantial sexual conduct with one of
8  the victims (§ 1203.066, subd. (a)(8)).

9           On April 29, 2010, a jury found MacDonald guilty as charged on all
   of the counts and found all of the allegations true. On July 23, 2010, the
10 court imposed an aggregate term of 112 years to life in prison consisting
   of six 15-to-life indeterminate terms (counts 7, 10, 12, 13, 14, & 15)
11 consecutive to one six-year determinate (middle) term (count 8) and
   consecutive to eight two-year determinate (one-third the middle) terms on
12 counts 1, 2, 3, 4, 5, 6, 9, and 11.

13 People v. Macdonald, 2011 Cal. App. Unpub. LEXIS 9454, 1-2 (Cal. App. Dec. 9, 2011)

14 (footnote omitted).

15 II.  **DISCUSSION**

16      A.  **Jurisdiction**

17      Relief by way of a petition for writ of habeas corpus extends to a person in

18 custody pursuant to the judgment of a state court if the custody is in violation of the

19 Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. §

20 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he

21 suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the

22 conviction challenged arises out of the Mariposa County Superior Court, which is

23 located within the jurisdiction of this court.  28 U.S.C. § 2241(d); 2254(a). Accordingly,

24 the Court has jurisdiction over the action.

25 _____

26 (…continued)
   presented in the traverse.

27      [2] The Fifth District Court of Appeal's summary of the facts in its December 9, 2011 opinion is
   presumed correct.  28 U.S.C. § 2254(e)(1).

28

                                        3

**B.      Legal Standard of Review**

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Under AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n. 7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

1.      Contrary to or an Unreasonable Application of Federal Law

A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result."  Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams, 529 U.S. at 405-06. "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that even a general standard may be applied in an unreasonable manner" Panetti v. Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted).  The "clearly established Federal law" requirement "does not demand more than a 'principle' or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009).  For a state decision to be an unreasonable application of clearly established federal law under §

2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle (or principles) to the issue before the state court. Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003). A state court decision will involve an "unreasonable application of" federal law only if it is "objectively unreasonable." Id. at 75-76, quoting Williams, 529 U.S. at 409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the Court further stresses that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." 131 S. Ct. 770, 785 (2011), (citing Williams, 529 U.S. at 410) (emphasis in original). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786 (citing Yarborough v. Alvarado, 541 U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts have in reading outcomes in case-by-case determinations." Id.; Renico v. Lett, 130 S. Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 129 S. Ct. 1411, 1419 (2009), quoted by Richter, 131 S. Ct. at 786.

## 2.   Review of State Decisions

"Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the claim rest on the same grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). This is referred to as the "look through" presumption. Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198 (9th Cir. 2006). Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion, "does not require that there be an opinion from the state court explaining the state court's reasoning." Richter, 131 S. Ct. at 784-85. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Id. ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been

1  'adjudicated on the merits.'").

2       <u>Richter</u> instructs that whether the state court decision is reasoned and explained,

3  or merely a summary denial, the approach to evaluating unreasonableness under §

4  2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments

5  or theories supported or, as here, could have supported, the state court's decision; then

6  it must ask whether it is possible fairminded jurists could disagree that those arguments

7  or theories are inconsistent with the holding in a prior decision of this Court." <u>Id.</u> at 786.

8  Thus, "even a strong case for relief does not mean the state court's contrary conclusion

9  was unreasonable." <u>Id.</u> (citing <u>Lockyer v. Andrade</u>, 538 U.S. at 75).  AEDPA "preserves

10  authority to issue the writ in cases where there is no possibility fairminded jurists could

11  disagree that the state court's decision conflicts with this Court's precedents." <u>Id.</u>  To put

12  it yet another way:

13         As a condition for obtaining habeas corpus relief from a federal
   court, a state prisoner must show that the state court's ruling on the claim

14  being presented in federal court was so lacking in justification that there
   was an error well understood and comprehended in existing law beyond

15  any possibility for fairminded disagreement.

16  <u>Id.</u> at 786-87.  The Court then explains the rationale for this rule, i.e., "that state courts

17  are the principal forum for asserting constitutional challenges to state convictions." <u>Id.</u> at

18  787. It follows from this consideration that § 2254(d) "complements the exhaustion

19  requirement and the doctrine of procedural bar to ensure that state proceedings are the

20  central process, not just a preliminary step for later federal habeas proceedings." <u>Id.</u>

21  (citing <u>Wainwright v. Sykes</u>, 433 U.S. 72, 90 (1977).

22            3.    <u>Prejudicial Impact of Constitutional Error</u>

23       The prejudicial impact of any constitutional error is assessed by asking whether

24  the error had "a substantial and injurious effect or influence in determining the jury's

25  verdict." <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993); <u>see also</u> <u>Fry v. Pliler</u>, 551

26  U.S. 112, 121-22 (2007) (holding that the <u>Brecht</u> standard applies whether or not the

27  state court recognized the error and reviewed it for harmlessness).  Some constitutional

28  errors, however, do not require that the petitioner demonstrate prejudice.  <u>See</u> <u>Arizona v.</u>

6

1    Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659

2    (1984).   Furthermore, where a habeas petition governed by AEDPA alleges ineffective

3    assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the

4    Strickland prejudice standard is applied and courts do not engage in a separate analysis

5    applying the Brecht standard.   Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002).   Musalin

6    v. Lamarque, 555 F.3d at 834.

7    **III.   REVIEW OF PETITION**

8         **A.   Claim 1: Ineffective Assistance of Counsel**

9         Petitioner presents several arguments that his right to effective assistance of

10   counsel was violated.

11              1.   State Court Decision

12        Petitioner presented this claim by way of direct appeal to the California Court of

13   Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the

14   appellate court and summarily denied in subsequent petition for review by the California

15   Supreme Court. (See Lodged Docs. 25-29.) Because the California Supreme Court's

16   opinion is summary in nature, this Court "looks through" that decision and presumes it

17   adopted the reasoning of the California Court of Appeal, the last state court to have

18   issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n.3 (1991)

19   (establishing, on habeas review, "look through" presumption that higher court agrees

20   with lower court's reasoning where former affirms latter without discussion); see also

21   LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000) (holding federal courts look

22   to last reasoned state court opinion in determining whether state court's rejection of

23   petitioner's claims was contrary to or an unreasonable application of federal law under

24   28 U.S.C. § 2254(d)(1)).

25        In denying Petitioner's claim, the California Court of Appeal explained:

26             MacDonald argues that ineffective assistance of counsel denied
           him a fair trial. The Attorney General argues the contrary.

27
               The right to counsel protects the due process right to a fair trial by
28         guaranteeing "access to counsel's skill and knowledge" and by ensuring

an "'ample opportunity to meet the case of the prosecution.'" (Strickland v. Washington (1984) 466 U.S. 668, 684-686 (Strickland).) To establish ineffective assistance of counsel, the defendant has the burden of showing that counsel's performance "fell below an objective standard of reasonableness" and prejudiced the defense. (Id. at pp. 687-692; People v. Ledesma (1987) 43 Cal.3d 171, 216-217 (Ledesma).) To establish prejudice, the defendant must make a showing of a "reasonable probability" "sufficient to undermine confidence in the outcome" that but for counsel's performance "the result of the proceeding would have been different." (Strickland, supra, at pp. 693-694; Ledesma, supra, at pp. 217-218.) A reviewing court can adjudicate a claim of ineffective assistance solely on the issue of prejudice without evaluating counsel's performance. (Strickland, supra, at p. 697.) We do so here.

"Here," MacDonald argues, "the record illustrates that defense counsel acted as a mere observer throughout the vast majority of the trial. Indicative of counsel's observer status was his near abject failure to object to improper questioning by the prosecution." "By way of specific example," he quotes the "relevant part" of Evidence Code section 767[fn2] and, with citations to the record, perfunctorily claims that his attorney "ignored and/or failed to object to myriad leading questions," "to myriad questions that had already been asked and answered," "to myriad questions where the prosecution was testifying," and "to many compound questions." He claims, too, that his attorney "failed to object to many questions asked by the prosecution during her cross examination that were beyond the scope of defense direct examination," "to questions which had no relevance to issues presented," and "to myriad prosecution questions that called for hearsay." Finally, he claims that his attorney "failed to raise objections to multiple questions by the prosecution that called for speculation." Apart from quoting a statute, however, he cites no authority and makes no attempt to articulate any theory of prejudice to establish how the omissions of which he complains show a "reasonable probability" "sufficient to undermine confidence in the outcome" that but for counsel's performance "the result of the proceeding would have been different." (Strickland, supra, 466 U.S. at pp. 693-694; Ledesma, supra, 43 Cal.3d at pp. 217-218.)

> **FN2**: "(a) Except under special circumstances where the interests of justice otherwise require: [¶] (1) A leading question may not be asked of a witness on direct or redirect examination. [¶] (2) A leading question may be asked of a witness on cross-examination or recross-examination." (Evid. Code, § 767.)

The rule is well settled that an "appellant cannot prevail on a claim of error if [he or] she makes no effort to establish that [he or] she was prejudiced by the alleged error." (In re S.C. (2006) 138 Cal.App.4th 396, 422 (S.C.), citing, e.g., Cal. Const., art. VI, § 13.) That is so here.

The next single-sentence paragraph in MacDonald's brief is equally conclusory. "In fact," he claims, "the trial record is absolutely replete with examples where defense counsel was duty-bound to object to improper questions and failed to do so." At the end of the sentence is a footnote with four single-spaced pages of citations to the record. Yet he cites no authority and makes no attempt to articulate any theory of prejudice. "When a point is asserted without argument and authority for the

proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.'" (<u>S.C.</u>, supra, 138 Cal.App.4th at p. 408.) That is so here.

Quoting Evidence Code section 352,[fn3] MacDonald then articulates, for the first time, a rationale for a claim of prejudice: "The prejudicial effect of defense counsel's ineffectiveness is shown by his failure to object to the prosecution admitting a particular photo into evidence." Noting that the prosecutor had established the age of a child victim before showing the jury a photograph of her "dressed up as a cute little cowgirl for the beauty pageant" he argues, "The purpose behind the unnecessary admission of this photo was obviously nothing but to put the image of a cute little girl in the minds of the jurors." He elaborates, "Proof of the undue prejudice created by the 'cuteness' of the photo was shown by the prosecutor referring to the photo twice during her closing argument."

> FN3: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)

The record refutes MacDonald's claim. First, as the prosecutor stated while showing the photograph to the jury during opening statement, the child "is going to tell you that she recalls that pageant. And it helped solidify for her when she had a first really good memory of something happening." Second, as she noted during argument to the jury, the child's "first real clear recollection" of a lewd or lascivious act was around the time of the pageant. Third, as she stated in argument to the jury, the photograph was relevant to the passage of time between the initial lewd or lascivious acts and trial, when she was 24 years old. "Helps to have an idea of what someone looked like as to the time they are testifying when they come in here as an adult and they don't look like a child that could easily be taken advantage of." Fourth, she argued, a contemporary photograph showing a beautiful child and expert testimony about child sexual assault accommodation syndrome showing "how someone who is sexually abused as a child might respond" can help the jury understand "how he got away with it."

The evidence at issue was more probative than prejudicial, so an objection by MacDonald's attorney would have been meritless. (Evid. Code, § 352.) Since the law neither does nor requires idle acts, an attorney has no duty to make a futile request and does not render ineffective assistance of counsel by not doing so. (Civ. Code, § 3532; see People v. Anderson (2001) 25 Cal.4th 543, 587.)

MacDonald next complains that his attorney withdrew an objection "so that he could get back to his office earlier" and that the prosecutor "misstated the evidence four times" by questioning a witness about his having touched a child victim's "breast, instead of chest, before [his attorney] objected." With reference to his first complaint, the record shows that the court and counsel agreed to change the order of testimony to accommodate his attorney's responsibilities of "an office to maintain and a practice to maintain" and the prosecutor's costs of housing witnesses and

the court's late arrival that day. With reference to his second complaint, the record shows that, after his attorney objected, not only did the witness correct his testimony to reflect the child victim's use of the word "chest," not "breast," when she told him about the molestation but also that the child victim had already used the word "breast," not "chest," when she testified about the molestation. "While exaggeration may not violate rules of court and standards of review, it is not an effective tool of appellate advocacy." (S.C., supra, 138 Cal.App.4th at p. 416.) Both complaints are meritless.

Finally, MacDonald complains that his attorney's question on direct examination, "In your whole life, have you ever, ever, abused a child physically?," not only elicited his reply, "Never," but also opened the door to impeachment by a witness who the prosecutor stated (outside the presence of the jury) had told law enforcement that MacDonald "did a full hand grab of her breast" when she was 13 or 14. His attorney acknowledged he was aware of the witness but the police report documented her saying "in no uncertain terms" she "would not be willing to come to testify." Contrary to the police report, the witness, 22 years old at the time of trial, testified that one time when MacDonald was drinking he "sort of slid his hand close to [her] chest area" but that she got up and "went somewhere else" and did not "let him get to [her] boob."

"'Surmounting Strickland's high bar is never an easy task,'" the United States Supreme Court emphasized recently. (Harrington v. Richter (2011) U.S. , [178 L.Ed.2d 624, 642; 131 S.Ct. 770, 787-788] (Richter), quoting Padilla v. Kentucky (2010) 559 U.S. , [176 L.Ed.2d 284, 297; 130 S.Ct. 1473, 1485].) "With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" (Richter, supra, U.S. at p. [178 L.Ed.2d at p. 642; 131 S.Ct. at pp. 787-788], quoting Strickland, supra, 466 U.S. at pp. 687, 693-694, cit. omitted.)

MacDonald falls far short of the mark. The witness at issue testified that he once "sort of slid his hand close to [her] chest area" but did not even touch her breast. In sharp contrast, some of his child victims testified to his repetitive commission of horrific acts of sexual molestation. For example, one child testified that he touched her breasts and her vagina with his hands, that he digitally penetrated her, that he orally copulated her, and, while holding her head, that he put his penis in and out of her mouth until he ejaculated. Another child testified that he touched her vagina a few times a week, that he frequently had her masturbate him to ejaculation, that he digitally penetrated her more than 15 times and orally copulated her more than 15 times, and that he had sexual intercourse with her two to three times a week. Testimony like that far more effectively refuted MacDonald's denial of ever having abused a child physically than the trifling testimony of the witness at issue. He fails to discharge his burden to demonstrate a reasonable probability that the result of the trial would have been different in the absence of her testimony. (Richter, supra, U.S. at p. [178 L.Ed.2d at p. 642; 131 S.Ct. at pp. 787-788]; Strickland, supra, 466 U.S. at pp. 687, 693-694.)[fn4]

**FN4**: At oral argument, MacDonald's appellate counsel relied on <u>United States v. Cronic</u> (1984) 466 U.S. 648 for the proposition that his attorney's performance at trial created "a classic case of cumulative error" from which a presumption of prejudice arises. As our reading of the record differs from his, <u>Cronic</u> offers him no solace.

<u>People v. Macdonald</u>, 2011 Cal. App. Unpub. LEXIS 9454 at 9-12.

2.    <u>Law Applicable to Ineffective Assistance of Counsel Claims</u>

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). <u>Canales v. Roe</u>, 151 F.3d 1226, 1229 (9th Cir. 1998). In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the Court must consider two factors. <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); <u>Lowry v. Lewis</u>, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. <u>Strickland</u>, 466 U.S. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. <u>Id.</u> at 688; <u>United States v. Quintero-Barraza</u>, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. <u>Strickland</u>, 466 U.S. at 687; <u>see also</u>, <u>Harrington v. Richter</u>, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different," <u>Strickland</u>, 466 U.S. at 694. Petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable. <u>Id.</u> at 687. The Court must evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. <u>Id.</u>; <u>Quintero-Barraza</u>, 78 F.3d at 1348; <u>United</u>

1    States v. Palomba, 31 F.3d 1456, 1461 (9th Cir. 1994).

2        A court need not determine whether counsel's performance was deficient before

3 examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.

4 Strickland, 466 U.S. at 697. Since the defendant must affirmatively prove prejudice, any

5 deficiency that does not result in prejudice must necessarily fail. However, there are

6 certain instances which are legally presumed to result in prejudice, e.g., where there has

7 been an actual or constructive denial of the assistance of counsel or where the State has

8 interfered with counsel's assistance. Id. at 692; United States v. Cronic, 466 U.S., at 659,

9 and n.25 (1984).

10        As the Supreme Court reaffirmed recently in Harrington v. Richter, meeting the

11 standard for ineffective assistance of counsel in federal habeas is extremely difficult:

12
13        The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard.
14 Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review
15 of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is
16 different from an incorrect application of federal law." Williams, supra, at 410, 120 S. Ct. 1495, 146 L. Ed. 2d 389. A state court must be granted a
17 deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
18

19        A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the
20 correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). And as this
21 Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general
22 the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of
23 clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."
24 Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251, 261 (2009) (internal quotation marks omitted).

25 Harrington v. Richter, 131 S. Ct. at 785-86.

26        "It bears repeating that even a strong case for relief does not mean the state

27 court's contrary conclusion was unreasonable." Id. at 786. "As amended by AEDPA, §

28 2254(d) stops short of imposing a complete bar on federal court relitigation of claims

1    already rejected in state proceedings." Id. "As a condition for obtaining habeas corpus

2    from a federal court, a state prisoner must show that the state court's ruling on the claim

3    being presented in federal court was so lacking in justification that there was an error

4    well understood and comprehended in existing law beyond any possibility for fairminded

5    disagreement." Id. at 786-87.

6          Accordingly, even if Petitioner presents a strong case of ineffective assistance of

7    counsel, this Court may only grant relief if no fairminded jurist could agree on the

8    correctness of the state court decision.

9                3.    Analysis

10         The crux of Petitioner's argument is that trial counsel repeatedly failed to object to

11   improper questions from the prosecutor.  Petitioner asserts that counsel did not object to

12   questions that were leading, asked and answered, testimonial in nature, compound,

13   irrelevant, speculative, and solicited hearsay. (See Pet. at 53.) In a footnote, Petitioner

14   provides a list of hundreds of references to the trial transcript that involve "examples

15   where defense counsel was duty-bound to object to improper questions and failed to do

16   so." (Id. at 49-53.) The state court denied the claim of ineffective assistance of counsel

17   because Petitioner did not describe how the failure to object to the prosecution's

18   questions prejudiced Petitioner.

19         The Court agrees. Petitioner has presented no basis to doubt that, even if the

20   objections had been made and sustained, the prosecutor could have simply rephrased

21   the questions and elicited the same substantive testimony. Further, failure to object to

22   the form of the questions from the prosecution is a matter of trial strategy. See

23   Strickland, 466 U.S. at 690 ("Strategic choices made after thorough investigation of law

24   and facts relevant to plausible options are virtually unchallengeable."). There could have

25   been perceived benefits to not objecting. For example, objecting to the questions could

26   have slowed the examination of the witnesses and caused the jury to dwell on the

27   witnesses' allegations of molestation for a longer time. Petitioner has not shown that the

28   failure to object caused counsel's conduct to fall below an objective level of

1   reasonableness, or that Petitioner was prejudiced by the conduct.

2       Petitioner also claims that counsel was ineffective for failing to object to the

3   admission into evidence of a photograph of one of the victims as contestant in a beauty

4   pageant as a child. Petitioner argues that the age of the witness at the time of the

5   molestation had been established, and that the picture was overly prejudicial by showing

6   the "cuteness" of the victim as a thirteen year old girl. (Pet. at 54-55.) The state court

7   relied on the prosecution's argument that the victim recalled the pageant as an event

8   occurring around when the sexual abuse started, and that the photo was helpful for the

9   jury to gain perspective on the appearance and actions of the victim at the time of the

10  sexual abuse. At trial, the victim was 24 years old, and her appearance would not

11  necessarily convey to the jury how the victim might have been susceptible to abuse as a

12  child. Based on the arguments presented by the prosecution, the state court found the

13  photograph was more probative than prejudicial, and that the failure of Petitioner's

14  counsel to object was without merit. The state court's decision was reasonable, and

15  Petitioner fails to demonstrate that the decision was "so lacking in justification that there

16  was an error well understood and comprehended in existing law beyond any possibility

17  for fairminded disagreement." Harrington v. Richter, 131 S. Ct.786-87.

18      Petitioner presents several other actions of counsel that he claims show

19  ineffectiveness. Petitioner complains that in order to enable an earlier return to his office,

20  counsel withdrew an objection to the admission of evidence On appeal, the state court

21  denied the claim because the trial court agreed to change the order of testimony to

22  accommodate Petitioner's trial counsel. Petitioner also contends that trial counsel

23  allowed the prosecutor to misstate the evidence by stating that Petitioner touched a child

24  victim's "breast" rather than "chest." The state court denied the claim as the child victim

25  had already used the word "breast" when she testified about the molestation. Neither

26  claim shows that counsel was ineffective nor that the state court's determination was

27  unreasonable.

28      Petitioner's final ground for ineffectiveness in the petition is that counsel, by

1  asking Petitioner whether he had ever physically abused a child, opened the door for

2  impeachment testimony by a witness who stated that when Petitioner was drinking he

3  "sort of slid his hand close to [her] chest area" but that she got up and "went somewhere

4  else" and did not "let him get to [her] boob." People v. Macdonald, 2011 Cal. App.

5  Unpub. LEXIS 9454 at 9-12. Counsel was aware of the impeachment witness, but noted

6  that the police report stated that she was not willing to testify. In denying the claim, the

7  state court explained that the witness testified that Petitioner was not successful at

8  attempting to touch her breast, and in light of the exceedingly more damaging testimony

9  of child victims regarding his repetitive commission of acts of sexual molestation

10  including digital penetration, oral copulation, forced masturbation, and sexual

11  intercourse, that the impeachment testimony was "trifling" in comparison.  The state

12  court's reasoning was sound. Regardless whether Petitioner's conduct was ineffective,

13  Petitioner has not shown prejudice especially in light of the large amount of incriminating

14  testimony that was admitted.

15      Petitioner has failed to meet his burden of showing that he was prejudiced as

16  required under Strickland. The state court decision that Petitioner was not prejudiced by

17  counsel's conduct was neither contrary to, nor an unreasonable application of, clearly

18  established Supreme Court law, nor was its decision based on an unreasonable

19  determination of the facts.

20      In his traverse, Petitioner asserts that his claim was not alleging ineffectiveness

21  under Strickland, but that "counsel entirely fail[ed] to subject the prosecution's case to

22  meaningful adversarial testing" as required by United States v. Cronic, 466 U.S. 648,

23  659 (1984). Under Cronic, The attorney's failure must be complete. Id.; Bell v. Cone, 535

24  U.S. 685, 695-97 (2002). Further, a claim of denial of the right to counsel under Cronic

25  does not require a showing of prejudice. Id. at 466 U.S. at 659. The Cronic exception to

26  the requirement of showing prejudice is "narrow" and the presumption of ineffectiveness

27  is "infrequently" justified. Florida v. Nixon, 543 U.S. 175, 190, 125 S. Ct. 551, 160 L. Ed.

28  2d 565 (2004).

1    Petitioner argues that Cronic error was committed by Petitioner's counsel in failing

2   to object to the prosecution's questions to several witnesses. Counsel's failure to object,

3   by itself, does not constitute a complete failure to test the prosecution's case. In the

4   example provided by Petitioner, counsel rarely objected to questions of Holly Eaton.

5   (Traverse at 11-14.) Instead, Petitioner's counsel cross-examined Eaton at length. (See

6   Rep. Tr. at 2022-82.) During the cross-examination, counsel attempted to undermine the

7   witness's testimony by pointing out that she had not told anyone about the sexual abuse

8   until just before trial (Id. at 2024); that she hated Petitioner and wanted him to be found

9   guilty (Id.); that the witness was confused and misstated dates during her direct

10  testimony (Id. at 2027); that when she reported Petitioner's conduct to the sheriff's

11  department as a teenager, she only reported that Petitioner touched her, but lied and

12  told them she was not engaging in intercourse with Petitioner (Id. at 2040-41.); and that

13  the victim moved back to Petitioner's ranch for several years with her two young

14  daughters even with the knowledge that Petitioner sexually abused her when she was

15  not much older than her daughters. (Id. at 2045-61.)

16    Petitioner's assertion that the state court misinterpreted and misapplied Cronic is

17  without merit. Although counsel did not raise objections, Petitioner has not shown that

18  "counsel entirely fail[ed] to subject the prosecution's case to meaningful adversarial

19  testing." United States v. Cronic, 466 U.S. 648, 659 (1984). Counsel elicited beneficial

20  testimony during cross-examination of the witness in question, and otherwise actively

21  participated throughout trial.  Counsel's failure to represent Petitioner was not complete,

22  and Petitioner is not entitled to relief under Cronic. See Bell v. Cone, 535 U.S. 685, 695-

23  97 (2002).

24    Petitioner has not shown that counsel was ineffective under either Strickland or

25  Cronic. The state court decision denying Petitioner's claim was neither contrary to, nor

26  an unreasonable application of, clearly established Supreme Court law, nor was its

27  decision based on an unreasonable determination of the facts. Petitioner is not entitled

28  to relief on claim one.

## B.    Claims 2 and 3 – Procedural Bar

Respondent asserts that the second and third claims presented in the petition are subject to procedural default. Petitioner presented the claims in his direct appeals before the California Court of Appeal and Supreme Court. (Lodged Docs. 25-29.) Because the California Supreme Court's opinion is summary in nature, this Court "looks through" that decision and presumes it adopted the reasoning of the California Court of Appeal, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n.3 (1991).

The California Supreme Court denied the petition based on a state procedural bar. The court addressed Petitioner's claims as follows:

> MacDonald argues that "judicial complacency and incompetence" together with "prosecutorial misconduct" denied him a fair trial. The Attorney General argues that MacDonald forfeited his right to appellate review of those issues by failing to object at trial and, alternatively, that the record shows neither judicial complacency nor prosecutorial misconduct.
>
> At the outset, we turn to the issue of forfeiture. The law is settled that failure to raise the issue of judicial conduct at trial forfeits the right to appellate review of that issue (People v. Farley (2009) 46 Cal.4th 1053, 1110; People v. Samuels (2005) 36 Cal.4th 96, 114) and that failure to raise the issue of prosecutorial conduct at trial forfeits the right to appellate review of that issue (People v. Thomas (2011) 51 Cal.4th 449, 491-492; People v. Lopez (2008) 42 Cal.4th 960, 966). On the premise that MacDonald "failed to assert arguments of judicial and prosecutorial misconduct or bias below," the Attorney General invokes the forfeiture doctrine. In his reply brief, MacDonald retorts that the Attorney General "evidently chose to ignore the myriad examples" of "judicial and prosecutorial impropriety" in his opening brief.
>
> Our review of each citation to the record that MacDonald argues shows "judicial and prosecutorial impropriety" confirms the premise of the Attorney General's argument. MacDonald did not raise the issues of judicial or prosecutorial conduct at trial. His new trial motion likewise was silent. On that record, he forfeited his right to judicial review. In any event, his argument has no merit since he fails to establish judicial or prosecutorial misconduct, let alone judicial or prosecutorial misconduct that deprived him of a fair trial. "A defendant is entitled to a fair trial but not a perfect one." (Lutwak v. United States (1953) 344 U.S. 604, 619.) MacDonald received the fair trial to which he was constitutionally entitled.

People v. Macdonald, 2011 Cal. App. Unpub. LEXIS 9454 at 12-13.

Based on the cases cited by the California Supreme Court, it appears that the California Supreme Court found the claims procedurally barred for failure to raise the

1   claims on direct appeal.

2           1.    Legal Framework for Procedural Default

3       The Supreme Court recently described the legal requirements that prevent review

4   of claims that were rejected on state court grounds:

5           "A federal habeas court will not review a claim rejected by a state
    court 'if the decision of [the state] court rests on a state law ground that is

6       independent of the federal question and adequate to support the
    judgment.' " <u>Kindler</u>, 558 U.S., at 55, 130 S.Ct., at 615 (quoting <u>Coleman</u>

7       <u>v. Thompson</u>, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640
    (1991)). The state-law ground may be a substantive rule dispositive of the

8       case, or a procedural barrier to adjudication of the claim on the merits.
    <u>See</u> <u>Sykes</u>, 433 U.S., at 81-82, 90, 97 S.Ct. 2497.

9   

        ***

10   

11       To qualify as an "adequate" procedural ground, a state rule must be
    "firmly established and regularly followed." <u>Kindler</u>, 558 U.S., at 60, 130

12       S.Ct., at 618 (internal quotation marks omitted). FN4 [omitted] "[A]
    discretionary state procedural rule," we held in <u>Kindler</u>, "can serve as an

13       adequate ground to bar federal habeas review." <u>Ibid.</u> A "rule can be 'firmly
    established' and 'regularly followed,'" <u>Kindler</u> observed, "even if the

14       appropriate exercise of discretion may permit consideration of a federal
    claim in some cases but not others." <u>Ibid.</u> California's time rule, although

15       discretionary, meets the "firmly established" criterion, as <u>Kindler</u>
    comprehended that requirement.

16   <u>Walker v. Martin</u>, 562 U.S. 307, 131 S. Ct. 1120, 1127-1128 (2011) (abrogating

17   <u>Townsend v. Knowles</u>, 562 F.3d 1200 (9th Cir. 2009)).

18       Respondent contends that Petitioner's claim is barred by the procedural default

19   doctrine as stated in <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991). <u>Coleman</u> bars review

20   of a petitioner's federal habeas claim when the claim was rejected in state court based

21   on an adequate and independent state procedural bar. <u>Id.</u> at 729-30.

22       In all cases in which a state prisoner has defaulted his federal claims in
    state court pursuant to an independent and adequate state procedural

23       rule, federal habeas review of the claims is barred unless the prisoner can
    demonstrate cause for the default and actual prejudice as a result of the

24       alleged violation of federal law, or demonstrate that failure to consider the
    claims will result in a fundamental miscarriage of justice.

25   
<u>Id.</u> at 750.

26   
    Respondent points out that a procedural bar must have risen from explicit and

27   
independent state law. <u>Id.</u> at 735; <u>Harris v. Reed</u>, 489 U.S. 255, 265, 109 S. Ct. 1038,

28

1   103 L. Ed. 2d 308 (1988). For the procedural bar to be adequate, the bar must be clear,

2   consistently applied, and well established at the time of the alleged default. Collier v.

3   Bayer, 408 F.3d 1279, 1284 (9th Cir. 2005). Also, the opinion of the last state court

4   rendering a judgment in the case must clearly and expressly state that its judgment rests

5   on a state procedural bar. Harris, 489 U.S. at 263; see Coleman, 501 U.S. at 729-30.

6        Petitioner's counsel failed to raise claims of judicial or prosecutorial misconduct at

7   trial. The state court ruled that "[t]he law is settled that failure to raise the issue of judicial

8   conduct at trial forfeits the right to appellate review of that issue and that failure to raise

9   the issue of prosecutorial conduct at trial forfeits the right to appellate review of that

10   issue." Macdonald, 2011 Cal. App. Unpub. LEXIS 9454 at 12-13. (citations omitted). In

11   making this ruling, the state court relied on California's contemporaneous objection rule,

12   "that a defendant cannot complain on appeal of misconduct by a prosecutor at trial

13   unless in a timely fashion he made an assignment of misconduct and requested that the

14   jury be admonished to disregard the impropriety." People v. Ayala, 23 Cal.4th 225, 284,

15   96 Cal. Rptr. 2d 682, 1 P.3d 3 (2000); People v. Ochoa, 19 Cal.4th 353, 427, 79 Cal.

16   Rptr. 2d 408, 966 P.2d 442 (1998); e.g., People v. Samayoa, 15 Cal.4th 795, 841, 64

17   Cal. Rptr. 2d 400, 938 P.2d 2 (1997); People v. Benson, 52 Cal.3d 754, 794, 276 Cal.

18   Rptr. 827, 802 P.2d 330 (1990). The Supreme Court has held that a violation of a state

19   contemporaneous objection rule can indeed result in a habeas petitioner's claim being

20   barred under the procedural default doctrine. Wainwright v. Sykes, 433 U.S. 72, 90, 97

21   S. Ct. 2497, 53 L. Ed. 2d 594. The Ninth Circuit has held that the California

22   contemporaneous objection rule results in a procedural default of a prosecutorial

23   misconduct claim. Rich v. Calderon, 187 F.3d 1064, 1069-70 (9th Cir. 1999); Howard v.

24   Campbell, 305 Fed. Appx. 442, 444 (9th Cir. 2008)[3]; Miles v. Hedgpeth, 514 Fed. Appx.

25

26        [3] Ninth Circuit Rule 36-3(b) provides: "Unpublished dispositions and orders of this Court issued on or after January 1, 2007 may be cited to the courts of this circuit in accordance with FRAP 32.1." However,

27   Ninth Circuit Rule 36-3(a) provides: "Unpublished dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue

28   preclusion."

1   673 (9th Cir. 2013). Based on the same reasoning, the Court finds that Petitioner's

2   judicial misconduct claim would be procedurally barred by the contemporaneous

3   objection rule. Muhammad v. Martel, 2012 U.S. Dist. LEXIS 76445 (N.D. Cal. 2012).

4          The Ninth Circuit uses a burden-shifting analysis to determine adequacy. Bennett

5   v. Mueller, 322 F.3d 573, 585-586 (9th Cir. 2003). Under this analysis, when the state

6   pleads, as an affirmative defense, that a claim is procedurally barred, the burden shifts to

7   the petitioner to challenge the adequacy of that bar by showing that it has been

8   inconsistently applied. Id. Where the petitioner challenges the adequacy of the bar, the

9   state retains the ultimate burden of proving adequacy. Id.

10         Respondent argues that the contemporaneous objection rule in question is an

11  explicit and independent state law. The opinion of the last state court rendering

12  judgment, the Fifth District Court of Appeal, citing several California Supreme Court

13  cases, clearly and expressly stated that Petitioner's failure to preserve his challenge was

14  grounds to deny his claim.

15         In this case, Petitioner provides no response to the procedural bar asserted by

16  Respondent and therefore fails to meet his burden of shifting the burden back to

17  Respondent. See King v. LaMarque, 464 F.3d 963, 967 (9th Cir. 2006) ("Bennett

18  requires the petitioner to 'place [the procedural default] defense in issue" to shift the

19  burden back to the government"). It should also be noted that when challenged, federal

20  courts have questioned whether the contemporaneous objection rule is consistently

21  applied and well established. See e.g., Steele v. Ayers, 2010 U.S. Dist. LEXIS 70731

22  (E.D. Cal. July 14, 2010) (failing to rely on other federal courts review of procedural

23  default based on the contemporaneous objection rule due to the lack of review of

24  whether the bar is consistently applied). However, in light of recent Supreme Court

25  authority, even if not applied entirely consistently, a state rule can be considered

26  consistently applied. See Walker v. Martin, 131 S. Ct. 1120, 1128, 179 L. Ed. 2d 62

27  (2011) ("A discretionary state procedural rule ... can serve as an adequate ground to bar

28  federal habeas review. A rule can be firmly established and regularly followed even if the

1    appropriate exercise of discretion may permit consideration of a federal claim in some

2    cases but not others.") (citations and internal quotations omitted). Petitioner has not

3    provided any evidence to establish that contemporaneous objection rule was not

4    consistently applied. The Court finds that Petitioner has not met his burden of

5    challenging the procedural default and his claim is barred from federal review.

6         To overcome a procedural default a prisoner must "demonstrate cause for the

7    default and actual prejudice as a result of the alleged violation of federal law, or

8    demonstrate that failure to consider the claims will result in a fundamental miscarriage of

9    justice." Coleman, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must

10   be something external to the petitioner, something that cannot fairly be attributed to him:

11   '[W]e think that the existence of cause for a procedural default must ordinarily turn on

12   whether the prisoner can show that some objective factor external to the defense

13   impeded counsel's efforts to comply with the State's procedural rule.'" Id. at 753 (citing

14   Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)).

15              2.       Reasons to Overcome Procedural Default

16        Even when a federal claim has been procedurally defaulted, "[t]he bar to federal

17   review may be lifted, if 'the prisoner can demonstrate cause for the [procedural] default

18   [in state court] and actual prejudice as a result of the alleged violation of federal law.' "

19   Maples v. Thomas, 132 S.Ct. 912, 922, 181 L. Ed. 2d 807 (2012) (quoting Coleman, 501

20   U.S. at 750, 746-47); see also Schneider v. McDaniel, 674 F.3d 1144, 1153 (9th Cir.

21   2012). Adequate "cause" for a default must be an "external" factor that cannot fairly be

22   attributed to the petitioner. Coleman, 501 US. at 753.

23                        a.       Cause

24        In Coleman, the court noted that attorney error which rises to the level of

25   ineffective assistance of counsel is considered "cause" within the meaning of this rule.

26   Coleman, 501 U.S. at 753-54. This is because a defendant has a right to effective

27   assistance of counsel under the Sixth Amendment, and a violation of that must be seen

28   as an external factor, and thus the error must be imputed to the state. Id.; Murray, 477

1   U.S. at 488. Here, Petitioner has alleged claims of prosecutorial misconduct and judicial

2   misconduct. Petitioner asserts that the prosecutor and the judge acted improperly,

3   preventing Petitioner from having a fair trial. The Court shall assume, without deciding,

4   that Petitioner has shown cause for the procedural default.

5                                   b.      Prejudice

6          In addition to cause, prejudice is a required element for Petitioner to overcome a

7   procedural bar. In order to establish prejudice to overcome a procedural default,

8   Petitioner must show "not merely that the errors at his trial created a possibility of

9   prejudice, but that they worked to his actual and substantial disadvantage, infecting his

10  entire trial with error of constitutional dimensions." See United States v. Frady, 456 U.S.

11  152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982) (discussing prejudice where

12  defendant failed to object to jury instructions in proceeding under 28 U.S.C. § 2255);

13  Schneider v. McDaniel, 674 F.3d 1144, 1153 (9th Cir. 2012). "Prejudice [to excuse a

14  procedural default] is actual harm resulting from the alleged error." Vickers v. Stewart,

15  144 F.3d 613, 617 (9th Cir. 1998).

16                              1.      Judicial Misconduct

17         Petitioner asserts that the judge committed misconduct based on several events:

18  he failed to make rulings or made vague rulings with regard to several objections; he

19  noted that the court of appeal might disagree with his decision to admit evidence; he

20  denied defense counsel's request to declare his own witness as hostile; he read juror

21  questions into the record without providing defense counsel the right to review the

22  questions beforehand; he misstated when he would interview a juror about contact with

23  a witness; he admonished defense counsel for asking leading questions, but did not

24  admonish the prosecution for the same actions; and he allowed the prosecution to read

25  Petitioner his advisements after conviction rather than reading them himself. (Pet. at 58-

26  64.)

27         The Due Process Clause guarantees a criminal defendant the right to a fair and

28  impartial judge. See In re Murchison, 349 U.S. 133, 136, 75 S. Ct. 623, 99 L. Ed. 942

1   (1955). There are two general ways in which a defendant may establish that he was

2   denied his constitutional right to a fair and impartial judge: (1) the appearance of judicial

3   bias or advocacy, or (2) the judge's pecuniary or personal interest in the outcome of the

4   proceedings. See Taylor v. Hayes, 418 U.S. 488, 501-04, 94 S. Ct. 2697, 41 L. Ed. 2d

5   897 (1974). A claim of judicial misconduct by a state judge in the context of federal

6   habeas review does not simply require that the federal court determine whether the state

7   judge committed judicial misconduct; rather, the question is whether the state judge's

8   behavior "rendered the trial so fundamentally unfair as to violate federal due process

9   under the United States Constitution." Duckett v. Godinez, 67 F.3d 734, 740 (9th Cir.

10  1995). A state judge's conduct must be significantly adverse to a defendant before it

11  violates constitutional requirements of due process and warrants federal intervention.

12  See Garcia v. Warden, Dannemora Corr. Facility, 795 F.2d 5, 8 (2d Cir. 1986).

13  "[O]pinions formed by the judge on the basis of facts introduced or events occurring in

14  the course of the current proceedings, or prior proceedings, do not constitute a basis for

15  a bias or partiality motion unless they display a deep-seated favoritism or antagonism

16  that would make fair judgment impossible." Liteky v. United States, 510 U.S. 540, 555,

17  114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994).

18       Petitioner argues that many small actions of the judge over the course of the trial

19  illustrated that the judge was biased towards the prosecution and that Petitioner was

20  denied a fundamentally fair trial. However, while Petitioner may have disagreed with

21  many of the decisions made by the judge, he has not provided any evidence of overt

22  bias against him.

23       Petitioner claims that the judge failed to make rulings on objections or made

24  vague rulings, at best. (Pet. at 58-59.) Petitioner cites to over forty objections that he

25  claims the court failed to properly rule. (Id.) Upon review of the objections, it appears that

26  on several occasions the judge did not rule on the objection because the opposing

27  counsel rephrased the question prior to a ruling. Further, other rulings on objections

28  appear to have been stated on the record with sufficient clarity as to allow the parties to

1    understand whether the judge was sustaining or overruling the objections. Neither the

2    trial judge's silence nor rulings on objections pointed out a bias towards either party that

3    would have made trial fundamentally unfair.

4        The only specific evidentiary ruling that Petitioner raises is where the judge

5    improperly ruled to allow the admission of evidence while noting that the appeals court

6    might disagree: Petitioner claims this violated his duty of professional competence. (Pet.

7    at 66.) The judge stated that he would admit the evidence based on the arguments he

8    heard, but that he "would like to admonish the district attorney that, you know, you might

9    have to face an appeals court that feels that this is going too far with the evidence."

10   (Rep. Tr. at 2004-05.) The judge's admonishment that his ruling was a close one, and

11   may be subject to reversal on appeal, does not show that his conduct was unreasonable

12   or based on his bias. Judges are constantly required to make difficult decisions without

13   time for serious reflection. Stating that an appeals court *might* reverse an evidentiary

14   ruling does not show that the judge acted with improper intent, and moreover does not

15   show that the judge displayed "a deep-seated favoritism or antagonism that would make

16   fair judgment impossible." Liteky, 510 U.S. at 555.

17       Petitioner also complains of the manner in which the trial court handled defense

18   counsel's questioning of defense witness Kathy Wallis – Petitioner's wife and the mother

19   and grandmother of the victims. (Pet. at 59-60.) Petitioner contends that the trial court

20   failed to allow him to treat Ms. Wallis as a hostile witness and ask her leading questions.

21   Upon review of the transcript, prior to calling the witness, defense counsel requested the

22   right to treat the witness as hostile. (Reptr's Tr. at 2355-57.) The judge did not

23   specifically rule, and the defense counsel requested that the witness not be considered

24   hostile unless there was evidence of hostility towards defense counsel. (Id.) Defense

25   counsel stated that he understood, and the witness was called. (Id.)

26       After substantial questioning of the witness, the prosecution started to object to

27   the questions presented by defense counsel. However, most were technical objections

28   to the form of the questions asked, such as the question being vague or compound.

(Reptr's Tr. at 2376-87.) From the written record, there is no indication that the witness was failing to respond to the questions posed by defense counsel. (Id.) However, defense counsel did ask several leading questions, and the judge sustained objections to those questions. (Id.) Upon review of the transcript, it appears that the witness was answering questions and did not evince overt signs of hostility. The witness was not refusing to answer questions, and usually provided relevant responses to the questions presented by defense counsel.

Defense counsel requested a sidebar, at which the judge and the prosecutor attempted to calm defense counsel down, and explain how to elicit testimony from the witness. (Reptr's Tr. at 2387-2398.) For example, the judge explained, ""But the point is if you ask a question. Why didn't you just – Did you do this? Did you do that? It is leading. And she has a right to object." (Id. at 2393.) At no point did the court prevent Petitioner from questioning the witness, it only limited leading questions, because at the time, the witness had yet to display signs of hostility. Nothing about the conduct of the judge during the questioning of this witness demonstrated judicial bias as to make the trial fundamentally unfair.

Next, Petitioner claims judicial misconduct based on the judge's action in reading questions posed by jurors to the entire jury before defense counsel had an opportunity to review the questions. (Pet. at 68.) Even if the judge failed to follow appropriate procedures with regard to juror questions, Petitioner has shown no basis for bias or other misconduct on behalf of the judge. Petitioner argues that the questions possibly could have tainted the entire jury, but failed to present argument that the questions indeed did so. Petitioner has not shown that the judge's actions in reading the questions to the entire jury rendered the trial fundamentally unfair.

Petitioner next contends that there was evidence of bias by the judge because the judge failed to remember to call and question jurors the next day after they were seen talking to a witness. (Pet. at 68.) The issue of tainting the jury was raised by the prosecution, not defense counsel. (Rept'rs Tr. at 2826-30.) Regardless, upon the

1   prosecution's renewed request, made without objection by defense counsel, the court

2   proceeded to question the jurors. Nothing about this exchange raises the specter of

3   judicial misconduct or bias.

4        Petitioner argues that the judge improperly found witness Lance MacDonald to be

5   argumentative, and repeatedly admonished him to answer the questions asked. Upon

6   review of the record it appears that MacDonald provided unresponsive answers, perhaps

7   even attempting to argue with the prosecution. An example is an exchange during the

8   examination of Mr. MacDonald:

9        "Q.   Now, have known your dad to have a drinking problem?

10       A.    Everyone has a few beers now and then.

11       THE COURT:  I am going to stop there. See what I mean, all you want to

12       do is argue.

13       THE WITNESS:  I'm not arguing.

14       THE COURT: She's asking you a question. And you want to give make

15       some general statement about what is going on in the world. Answer her

16       question if you can."

17  (Rept'rs Tr. at 2879.) While the judge admonished this witness repeatedly, it appears

18  that the witness provided several non-responsive answers to direct questions rather

19  than relevant testimony. The fact that the judge attempted to curtail such commentary

20  prior to objections from the prosecution does not show bias. If anything, it demonstrates

21  the efforts of the judge to control the proceeding. Further, the testimony of the witness

22  was objectionable, and had the Court not taken action, there is little doubt that the

23  prosecution would have properly objected to the testimony. Again, Petitioner's claims do

24  not evidence misconduct by the judge that would make the trial fundamentally unfair.

25       Finally, Petitioner argues that the fact that the judge allowed the prosecutor to

26  read some of the advisements onto the record shows that the judge was either

27  incompetent or favored the prosecution. (Pet. at 71.) What Petitioner fails to mention is

28  that the judge was a visiting judge from a different county, and that the prosecutor

26

1    assisted the judge in finding a copy of the proper advisements. (Rep. Tr. 3891-95.) While

2    the prosecutor assisted the judge, the judge's concern was that Petitioner received

3    proper notice of his rights regarding his sentence and his right to appeal. (Id.) Petitioner

4    has not shown that the actions of the judge rendered his trial fundamentally unfair.

5         For the reasons discussed above, the Court finds that Petitioner would not be

6    successful in his claim of judicial misconduct. As the claim would not be successful,

7    Petitioner is unable to show prejudice from counsel's failure to present the claim at trial.

8                        2.        Prosecutorial Misconduct

9         Petitioner also asserts that the prosecutor committed misconduct based on

10   several events, including: asking leading questions; asking for nine sidebars as a part of

11   objections to defense counsel's questioning of witnesses; and improperly objecting to

12   prevent Petitioner from presenting impeachment evidence. (Pet. at 65-68.)

13        In general, a prosecutor's actions will not be grounds for habeas relief unless they

14   "'so infected the trial with unfairness as to make the resulting conviction a denial of due

15   process.'" Darden v. Wainwright, 477 U.S. 168, 180, 106 S. Ct. 2464, 91 L. Ed. 2d 144

16   (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d

17   431 (1974)). This is a "very general" standard, "leaving courts 'more leeway . . . in

18   reaching outcomes in case-by-case determinations.'" Parker v. Matthews,    U.S.   , 132

19   S. Ct 2148, 2155, 183 L. Ed. 2d 32 (2012) (quoting Yarborough v. Alvarado, 541 U.S.

20   652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004)) (alteration in original).

21        A prosecutor's "misleading . . . arguments" to the jury may rise to the level of a

22   federal constitutional violation. Sechrest v. Ignacio, 549 F.3d 789, 807 (9th Cir. 2008)

23   (citing Darden, 477 U.S. at 181-82); see also Allen v. Woodford, 395 F.3d 979, 997 (9th

24   Cir. 2005) (citing Darden for conclusion that improper prosecutorial argument may

25   violate federal constitutional rights). "[A] prosecutor's improper comments will be held to

26   violate the Constitution only if they 'so infected the trial with unfairness as to make the

27   resulting conviction a denial of due process.'" Parker, 132 S. Ct. at 2153 (quoting

28   Darden, 477 U.S. at 181); see also Caldwell v. Mississippi, 472 U.S. 320, 340, 105 S. Ct.

1    2633, 86 L. Ed. 2d 231 (1985).

2    Petitioner cannot establish prejudice with regard to his claim of prosecutorial

3    misconduct. Petitioner claims that the prosecutor committed misconduct by asking

4    leading questions and that the admitted to doing so on the record. (Pet. at 66.)

5    Petitioner's claims are without merit. Even assuming the prosecutor asked leading

6    questions, that, by itself, would not rise to the level of misconduct or make the underlying

7    trial fundamentally unfair. Further, where Petitioner claims that the prosecutor admitted

8    to asking improper questions, the prosecutor corrected her questions to prevent

9    misleading testimony from being admitted. (See Rep. Tr. at 1703; 1876.) The

10   prosecutor's statements that "I guess I should have said it the other way" and "I think my

11   question was misleading. I misspoke. Hygienist. I don't want to mislead. You're in school

12   correct?" do not illustrate misconduct. (Id.) If anything, the comments show that the

13   prosecutor was being trying to present accurate evidence to the jury.

14   Petitioner claims that the prosecution committed misconduct by preventing

15   Petitioner from presenting evidence of a witness's relationship with an ex-boyfriend. (Pet.

16   at 67.) Petitioner claims this was improper because the prosecution based the objection

17   on a false claim that she lacked knowledge of the ex-boyfriend. In reality, the

18   prosecution objected to the questions posed by defense counsel because they were

19   outside the scope of her re-direct. Regardless, the judge allowed Petitioner to question

20   the witness with regard to whether the witness knew that her boyfriend had admitted to

21   child molestation during the time they were cohabitating. (Rep. Tr. at 2147.) Petitioner

22   has not shown that the prosecutor's objections were improper, or that he was prejudiced

23   by the objections.

24   The Court finds that Petitioner would not be successful in his claim of

25   prosecutorial misconduct. As the claim would not be successful, Petitioner is unable to

26   show prejudice from counsel's failure to present the claim at trial.

27                    c.    Miscarriage of Justice

28   Finally, Petitioner can avoid a procedural default if he can demonstrate that a

1  fundamental miscarriage of justice would result from the default. The United States

2  Supreme Court has limited the "miscarriage of justice" exception to petitioners who can

3  show that "a constitutional violation has probably resulted in the conviction of one who is

4  actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 851, 130 L. Ed. 2d 808

5  (1995). "In order to pass through Schlup's gateway, and have an otherwise barred

6  constitutional claim heard on the merits, a petitioner must show that, in light of all the

7  evidence, including evidence not introduced at trial, "it is more likely than not that no

8  reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" Majoy

9  v. Roe, 296 F.3d 770, 775-76 (9th Cir. 2002), quoting Schlup, 513 U.S. at 327. In

10  applying this standard, "A petitioner need not show that he is "actually innocent' of the

11  crime he was convicted of committing; instead, he must show that ""a court cannot have

12  confidence in the outcome of the trial.'" Majoy, 296 F.3d at 776, quoting Carriger v.

13  Stewart, 132 F.3d 463, 478 (9th Cir. 1987) (en banc), quoting Schlup, 513 U.S. at 316.

14  Petitioner has not presented any credible evidence to undermine the factual

15  assertions that form the basis of his convictions. Without presenting reliable, credible

16  evidence of his innocence, Petitioner has not made a sufficient showing of actual

17  innocence to serve as an equitable exception to procedural default. Schlup, 513 U.S. at

18  324 ("To be credible, such a claim requires petitioner to support his allegations of

19  constitutional error with new reliable evidence — whether it be exculpatory scientific

20  evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not

21  presented at trial. Because such evidence is obviously unavailable in the vast majority of

22  cases, claims of actual innocence are rarely successful.") Petitioner has not shown that it

23  is more likely than not that no reasonable juror would have found him guilty beyond a

24  reasonable doubt in light of the alleged errors at trial described above. Id. at 314-15.

25  Accordingly, Petitioner is procedurally barred from presenting his second and third

26  claims.

27  **IV.    RECOMMENDATION**

28  It is recommended that the petition for writ of habeas corpus be DENIED with

1    prejudice.

2           This Findings and Recommendation is submitted to the assigned District Judge,

3    pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after

4    being served with the Findings and Recommendation, any party may file written

5    objections with the Court and serve a copy on all parties. Such a document should be

6    captioned "Objections to Magistrate Judge's Findings and Recommendation." Any reply

7    to the objections shall be served and filed within fourteen (14) days after service of the

8    objections. The parties are advised that failure to file objections within the specified time

9    may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d

10   834, 839 (9th Cir. 2014).

11

12   IT IS SO ORDERED.

13        Dated:   __April 26, 2016__              ___/s/ Michael J. Seng___

14                                                 UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28